IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

)
LISA HAYES, on behalf of herself,                    )
and all others similarly situated,                      )
                                                                       )
                                        Plaintiff,            )        Civil Action No.:   15-cv-13669
                                                                       )
            v.                                                        )        **CLASS ACTION**
                                                                       )
AT&T MOBILITY LLC,                                   )        **JURY TRIAL DEMANDED**
                                                                       )
                                        Defendant.         )
                                                                       )
_____)

## CLASS ACTION COMPLAINT

Plaintiff Lisa Hayes ("Plaintiff"), on behalf of herself and a class of all others similarly-situated, brings this class action against the Defendant AT&T Mobility, LLC (hereinafter, "Defendant" or "AT&T"). Plaintiff's allegations herein are based on her personal knowledge as to herself and upon information and belief and the investigation of her counsel as to all others matters.

## I.      INTRODUCTION

1.      Plaintiff, by her undersigned attorneys, brings this action individually and on behalf of two classes of consumers against Defendant AT&T for deceptive and unfair trade practices. This action arises from AT&T's practice of placing numerous limiting conditions on its wireless service plans marketed as "unlimited" and either failing to disclose or adequately disclose the same to its consumers.

1

2.     As a result of AT&T's deceptive and material misrepresentations as alleged herein, Plaintiff and members of the proposed Classes (as defined below) have suffered damages, including, payment for services that were not as represented and disruption and slowing of cell service.

## II.     PARTIES

3.     Plaintiff Lisa Hayes is a resident of the Commonwealth of Massachusetts and resides in Essex County.

4.     Defendant AT&T Mobility, LLC is a Delaware limited liability company with its principal office or place of business in Atlanta, Georgia. AT&T Mobility LLC transacts or has transacted business in this district and throughout the United States.

## III.     JURISDICTION AND VENUE

5.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) in that the amount in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and this is a class action in which there are members of the proposed Classes who are citizens of a state different from Defendant.

6.     Venue is proper pursuant to 28 U.S.C. §1391 in that Plaintiff resides in this District, many of the acts and transactions giving rise to this action occurred in this District, Defendant is authorized to conduct business in this District, has intentionally availed itself of the laws and markets within this District through distribution and sale of its products in this District, does substantial business in this District, and is subject to personal jurisdiction

in this District.

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    AT&T Falsely Represents That Certain Service Plans Provided And Would Continue To Provide "Unlimited" Data.

7.      AT&T provides wireless service plans to 120 million subscribers in the United States. Most of these service plans offer and indeed, if a customer has or has purchased a certain type of cell phone, such as an iPhone or other type of "smart phone", require the purchase of wireless data. The wireless data allows subscribers to use their phones to browse websites, send and receive emails, use smartphone applications, watch videos and stream music, and use GPS navigation.

8.      In or about June of 2007, AT&T first launched its offering of a purported "unlimited" data plan (the "Unlimited Plan"), with no high-speed data caps or automatic speed reductions.  This heavily promoted aspect of its service plans was critical to AT&T's efforts to grab a large share of the quickly expanding smart phone market, particularly since AT&T was the sole service plan provider for the Apple iPhone between 2007 and 2010.

9.      Defendant's plan was to convince consumers to purchase its smartphones, wireless data cards and mobile service plans by promoting that its service plans provided for "unlimited" data, when in fact those plans would become limited by what is known or referred to as "throttling." Throttling is the process of intentionally slowing the data speed on cellular phones or wireless cards when the user is approaching or has exceeded a certain data usage limit which is proscribed by AT&T.

10.    AT&T ceased offering the Unlimited Plan in June of 2010, but permitted existing subscribers to the Unlimited Plan, such as Plaintiff, to be "grandfathered" into those plans. AT&T expressly represented that these subscribers would continue to be provided with "unlimited" data for so long as they remained under contract with AT&T.

11.    AT&T's expectation and hope was that its "unlimited" subscribers would not switch to another service plan provider. This was particularly important to AT&T when it ceased to be the sole service provider for the Apple iPhone in 2011 and given that a number of smartphones offered by competing service providers had been and were being introduced into the market by that time.

12.    As a result, most of the AT&T subscribers who were offered grandfathering, including the Plaintiff, remained with AT&T rather than switching to a new plan, believing they would continue to enjoy "unlimited" data. Thus, subscribers to an Unlimited Plan continued to pay the cost of an Unlimited Plan, rather than choose another data plan with AT&T or switch to another provider. In addition, in some instances a further condition of continuing to have "unlimited" data was to forego opportunities to receive phone upgrades for little or no cost.   AT&T's "unlimited" data promise was thus material to subscribers.

13.    The process of "throttling" was not disclosed to AT&T customers who were grandfathered into the so-called "unlimited" data plans after AT&T switched over to tiered data plans.  Of course, AT&T's goal in implementing "throttling" was and is to force grandfathered subscribers to forego their Unlimited Plan and sign up for the more costly "tiered" service plans which also impose hefty overage fees once subscribers exceed the set

data thresholds. In addition, AT&T apparently does not throttle its tiered plan subscribers' data.  As one article noted, "unlimited" plan subscribers were faced with the choice of continuing to "pay $30 for 'unlimited' service where you're actually only getting 2 GB of data before your phone becomes useless, or sign up for a 3GB tier for the same price so you're in line to get socked with the usage overages of tomorrow." Further, AT&T can also collect substantial early termination fees from "unlimited" subscribers who cancel service after being throttled.

*See* *http://www.dslreports.com/showne%0cws/118235*.

## B.    AT&T's Throttling of Unlimited Plans.

14.    Although AT&T promised that Unlimited Plan subscribers would continue to have access to "unlimited" data, in 2011, it began "throttling" the data speed, typically without warning, once those subscribers exceeded secret data usage caps.

15.    Beginning in 2012, Defendant implemented a secret data usage cap of 3GB for all devices using Defendant's 3G network (e.g., iPhone 3G, 3GS, 4) and HSPA+ network (e.g., iPhone 4S), and 5 GB per billing cycle for devices using Defendant's LTE network (e.g., iPhone 5, 5S, 6, 6 Plus). AT&T continued to throttle Unlimited Plan subscribers during the term of their Unlimited Plan at secret data caps of 3GB or 5GB even though it offers tiered service plans with up to 50GBs of data per month.

16.    The "throttling" persisted even if AT&T's network was not congested at the time and thus was capable of handling the subscribers' data usage at regular speeds. Moreover, once throttled, subscribers' data speeds remain throttled until the next billing

cycle.

17.     AT&T's throttling practices not only significantly impaired the ability of subscribers to use their data service, but the practice effectively eliminates access to certain applications which contain minimum download speeds. This practice of throttling the data speed was aimed specifically at AT&T's Unlimited Plan subscribers, such as the Plaintiff, and effectively rendered such customers unable to sufficiently access data for the remainder of a billing cycle, making wireless functions, such as accessing the internet on their phones, difficult or impossible.  Thus, AT&T interfered with and limited the use of the supposedly "unlimited" service paid for by the Unlimited Plan subscribers. In contrast, Defendant apparently does not throttle the data of tiered plan subscribers' data at any point while it continued to throttle Unlimited Plan subscribers at the secret data caps of 3GB or 5GB even though the tiered service plans provide up to 50GBs of data per month.

**C.     AT&T's Throttling Is Inconsistent With Plaintiff's and Class Members' Expectations.**

18.     A reasonable consumer is likely to be misled by AT&T's promise of "unlimited" data, particularly in combination with AT&T's advertisements that encourage customers to use smartphones and data plans in typical ways such as browsing the internet, streaming or downloading music and videos, running apps, and using GPS navigation. Defendant's throttling practices were wholly inconsistent with Defendant's repeated and emphasized representations that the Unlimited Plans being purportedly grandfathered would continue to be "unlimited."

19.     AT&T apparently had undertaken internal research and focus groups which

6

revealed that customers interpret "unlimited" to mean no restrictions on data, and that AT&T's practice of throttling data is inconsistent with its "unlimited" representations. Nevertheless, Defendant continued to represent to Plaintiff and Members of the Classes that its Unlimited Plan provided for unlimited data.

20.     The imposition of data usage thresholds and the resulting speed reductions from throttling is wholly inconsistent with the concept of "unlimited."  AT&T was aware that its continued use of the word "unlimited" to describe its data plans was likely to, and did, mislead and deceive consumers. Thus, customers were inhibited from making an informed decision regarding their choice of provider and plan as Defendant interfered with their ability to fully or accurately compare alternative plans from competitors or AT&T. AT&T continued to mislead them into believing that their Unlimited Plan was superior and cost effective.  Defendant profited from misleading Plaintiff and Members of the Classes about its Unlimited Plan and throttling "unlimited" subscribers' data by inducing them to continue with the Unlimited Plan instead of choosing a competitor or to switch to tiered plans to avoid throttling, which either cost more (depending on the amount of data provided for in the plan) or which come with overage charges once a customer exceeds the data limits subject to those plans. Further, Defendant has collected substantial early termination fees from subscribers to the Unlimited Plan who cancelled service after being throttled.

**D.      AT&T Fails To Adequately Disclose That It Engages In Throttling**

21.     AT&T's offer and marketing of its Unlimited Plans to existing subscribers once it transitioned to offering tiered plans to new subscribers did not disclose AT&T's

throttling practices. Similarly, AT&T failed to adequately disclose the data usage limits or caps it was employing or how throttling would impact their data service.

22.     The occasional and carefully crafted text messages or emails that AT&T sent to certain subscribers as they approached or exceeded the secret data usage caps did not adequately disclose their throttling practice. As noted below, in Plaintiff's case, the first text she received from AT&T regarding any throttling practice was in August, 2015 which stated that she had used 75% of a supposed 5GB allotment of data usage, and that she may experience reduced speeds if she exceeded 5GBs prior to her next billing cycle, thus only suggesting that her speeds may be slowed when in fact AT&T consistently throttles subscribers who purportedly have "unlimited" data once they exceed certain undisclosed data usage caps.

23.     Thus, Defendant enticed Plaintiff and members of the Classes into purchasing phones and service plans, wireless data cards and service plans by emphasizing the purported "unlimited" nature of the data service plans without disclosing, or at least adequately disclosing, that the Unlimited Plans are not, in fact, truly unlimited. Defendant failed to disclose to Plaintiff and the Classes, that it "throttles" the data speed on cellular phones or wireless cards when the user has approached or exceeded Defendant's internally proscribed data usage limits. These internally proscribed data usage thresholds were not disclosed or adequately disclosed to Plaintiff and the Classes.

24.     Defendant's "unlimited" misrepresentations and its failure to adequately disclose its secret data caps and throttling practice was, and is, a deceptive act or practice. In

making and disseminating the statements regarding its "unlimited" data plans as alleged herein, Defendant knew that its advertisements were untrue, deceptive and misleading.

**E.**   **The FCC Finds That AT&T Misled Consumers Regarding Its "Unlimited" Data Plans And Imposes $100 Million Fine.**

25.    On or about June 3, 2015, the Federal Communications Commission ("FCC") issued a Notice of Apparent Liability for Forfeiture and Order (the "Notice")[1], in which the FCC found that AT&T "apparently willfully and repeatedly violated the Commission's Open Internet Transparency Rule".  The FCC findings included that AT&T had, among other things, "(1) us[ed] the misleading and inaccurate term "unlimited" to label a data plan that was in fact subject to prolonged speed reductions after a customer used a set amount of data; and (2) fail[ed] to disclose the express speed reductions that it applied to "unlimited" data plan customers once they hit a specified data threshold."

26.    AT&T claimed that it had notified customers regarding its practices by way of a press release, one bill insert in 2011, an email to certain heavy data users, a single text in March 2012 when a user was nearing a data cap threshold, and a link to the website. The FCC responded that these disclosures claimed by AT&T to have sufficiently identified its practices were insufficient to overcome the misleading and inaccurate statements about the Unlimited Plan and, as a result, consumers were deprived "of sufficient information to make informed choices about their broadband service."

27.    The Notice imposed liability on AT&T for forfeiture "in the amount of one

---

[1] https://www.fcc.gov/document/att-mobility-faces-100m-fine-misleading-consumers-0

hundred million dollars ($100,000,000) for willful and repeated violations of Section 8.3 of the Commission's rules, 47 C.F.R. § 8.3.

**F.      Plaintiff Was Subjected To AT&T's Throttling**

28.      Plaintiff purchased an Unlimited Plan and continued to be enrolled in and pay for such plan, as did members of the Classes, having been "grandfathered" into an Unlimited Plan, and was thereby exposed to AT&T's false, misleading, and deceptive labeling, marketing, and advertising for AT&T's Unlimited Plan.

29.      Specifically, relying on AT&T's claim and representation of "unlimited" data, Plaintiff purchased an iPhone from AT&T with an AT&T "unlimited" data plan. Prior to making her initial purchase, Plaintiff had viewed and heard advertisements and representations for the "unlimited" data plan available with the iPhone.  The information provided to her indicated that she would receive "unlimited" data without restriction. There was no indication that her data usage would be throttled when she reached a particular data usage threshold. Plaintiff did not review and was not aware of any arbitration agreements or class action ban as part of her purchase and use of her phone and the Unlimited Plan.

30.      After purchasing her initial iPhone and Unlimited Plan, Plaintiff upgraded to other newer models of the iPhone. Each such time, AT&T offered to "grandfather" her in, allowing her the opportunity to continue with her Unlimited Plan, rather than requiring her to switch to AT&T's tiered mobile data plans required for new customers. In making these subsequent device purchases and in continuing to subscribe to the Unlimited Plan through AT&T, Plaintiff continued to rely on AT&T's representation that the data plan was, as

represented, "unlimited." Thus, Plaintiff read and relied on, in initially purchasing her phone and the Unlimited Plan, and in continuing to purchase the Unlimited Plan, AT&T's representations that the Unlimited Plan would, in fact, provide "unlimited" data service.

31.     Plaintiff noticed that at certain times of the month her internet connection was slower and her ability to download was more difficult than usual. She did not know the cause of these problems, but assumed they were the result of service issues with AT&T.

32.     On or about August 18, 2015, AT&T sent Plaintiff a text stating that she had used 3.75 GBs of data, or 75% of a supposed 5GB allotment of data usage, and that she may experience reduced speeds if she exceeded 5GBs prior to her next billing cycle. This was the first notice regarding AT&T's throttling practice that Plaintiff received from AT&T. Moreover, the text only suggested that her speeds may be slowed when in fact AT&T consistently throttled subscribers who purportedly have "unlimited" data once they exceeded certain undisclosed data usage caps. AT&T thus failed to adequately advise Plaintiff of AT&T's throttling program imposed on her supposedly "unlimited" data plan.

33.     Each time Plaintiff purchased and renewed her Unlimited Plan with AT&T, she reasonably believed that she would have "unlimited" data service, and not be subject to data usage restrictions or throttling when she reached a certain data usage threshold.

34.     Plaintiff was harmed by Defendant's misleading representations and omissions, including by paying for products and services that were not as advertised and by paying more for her products and services than she otherwise would have paid.

### G.   Inapplicable Customer Agreement or Unenforceable Arbitration Clause

35.     The primary basis of the claims asserted herein by Plaintiff on behalf of the Classes relate to AT&T's false and misleading statements regarding the purported "unlimited" nature of the data plan which induced Plaintiff and the Classes to agree to make payments to AT&T for the data they expected to be available to them on a monthly basis. Thus, any agreement or contract was procured by fraud. Plaintiff and the Classes would not have purchased an Unlimited Plan from AT&T had they known that they, in fact, would not be provided with unlimited data.  As such, these are not claims which arise out  any "relationship" between AT&T and Plaintiff or the members of the Classes, nor are they based on the terms of AT&T's Wireless Customer Agreement ("Agreement"). Thus, the terms of the Agreement, including Section 2 of the Agreement relating to arbitration, do not control in evaluating these claims. Although the Agreement purports to govern claims based on actions by AT&T prior to entering into the Agreement, such as advertising by AT&T, neither Plaintiff nor the members of the Classes can be deemed to have agreed to be misled or fraudulently induced.

36.     Separate and apart from those claims, is Plaintiff's additional and alternative claim of breach of express warranty, which is based on AT&T's violation of the Agreement. As to that claim, and only as to that claim, Section 2 of the Agreement purports to require that certain disputes be individually arbitrated.  However, Section 2 is unenforceable because it is substantively and procedurally unconscionable and/or is against public policy. First, there is no mutual assent as is required to create a binding contract. The so-called Agreement

purports to give AT&T the unfettered right to unilaterally change the terms and obligations of the Agreement without the consent of the consumer, except as to changes in price and reduction of geographical area.  The requirement of consent does not extend to modifying the unlimited data usage terms afforded Plaintiff and the members of the Classes, including the slowing of access to data or effective data usage, i.e. "throttling".   Moreover, AT&T has the right to terminate the Agreement at any time without cause. Thus, Defendant AT&T's Agreement does not meet the requirements of a binding contract, and therefore the arbitration clause is not binding.  Since there is insufficient consideration to support an enforceable contract, there is insufficient consideration to support arbitration of any dispute relating thereto, including as to the promises made by AT&T relating to the unlimited data plan.

37.     To the extent that Defendant asserts that Plaintiff's and members of the Classes' claims are subject to an arbitration agreement or a class action waiver, Plaintiff and the Classes seek declaratory relief in the form of a finding that such a purported arbitration agreement is void and unenforceable.

## V.     CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action on behalf of herself and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

39.     Plaintiff seeks to represent the following Classes:

> All consumers in the United States who purchased an Unlimited Plan from AT&T Mobility LLC and whose data usage was throttled during the term of their Unlimited Plan ("Nationwide Class"); and

> All consumers residing in Massachusetts who purchased an Unlimited

13

Plan from AT&T Mobility LLC and whose data usage was throttled during the term of their Unlimited Plan ("Massachusetts Subclass").

Excluded from the above Classes are Defendant and its officers, directors and employees.

40.     ***Numerosity***. Members of the Nationwide Class and Massachusetts Subclass are so numerous that joinder of all members is impracticable. While the exact number of class members remains unknown at this time, upon information and belief, there are at least thousands of members of the Nationwide Class and thousands of members of the Massachusetts Subclass.

41.     ***Existence and Predominance of Common Questions of Law and Fact***. This action involves common questions of law and fact which predominate over any questions affecting individual Nationwide Class or Massachusetts Subclass members. These common legal and factual questions include, but are not limited to, the following:

a. whether Defendant's statements and representations regarding the Unlimited Plan were false and misleading;

b. whether Plaintiff and the members of the Nationwide Class and the Massachusetts Subclass were induced to purchase the Unlimited Plan based on false and misleading statements and representations by Defendant;

c. whether Defendant breached its express warranties with Plaintiff and the members of the Nationwide Class and Massachusetts Subclass;

d. whether Defendant has been unjustly enriched to the detriment of Plaintiff and the members of the Nationwide Class and Massachusetts Subclass;

e. whether Plaintiff and the members of the Nationwide Class and Massachusetts Subclass have sustained damages as a result of the conduct alleged herein and, if so, what is the proper measure of such damages;

f. whether Plaintiff and the members of the Nationwide Class and Massachusetts Subclass are entitled to restitution and, if so, what is the proper measure of

14

restitution; and

g. whether Plaintiff and the members of the Nationwide Class and Massachusetts
Subclass members are entitled to declaratory and injunctive relief.

42.     *Typicality*. Plaintiff' claims are typical of the claims of the members of the

Nationwide Class and Massachusetts Subclass because, *inter alia*, all Nationwide Class and

Massachusetts Subclass members were injured through the common misconduct described

above and were subject to Defendant's deceptive "unlimited" data plan representations.

Plaintiff are advancing the same claims and legal theories on behalf of themselves and all

members of the Nationwide Class and Massachusetts Subclass.

43.     *Adequacy of Representation*. Plaintiff will fairly and adequately protect the

interests of the members of the Nationwide Class and Massachusetts Subclass. Plaintiff has

retained counsel experienced in complex consumer class action litigation, and Plaintiff

intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests

to those of the Nationwide Class and Massachusetts Subclass.

44.     *Superiority*. A class action is superior to other available methods for the fair

and efficient adjudication of this controversy. The expense and burden of individual

litigation would make it impracticable or impossible for members of the proposed Classes to

prosecute their claims individually. Most individual members of the Classes have little

ability to prosecute an individual action due to the complexity of the issues involved in this

litigation and the significant costs attendant to litigation on this scale compared to the

relatively small damages suffered by individual members of the Classes. Further,

individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, a class action provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here. Trial of Plaintiff's and members of the Classes claims is manageable as a class action, and economies of time, effort, and expense will be fostered and uniformity of decisions will be insured. Without a class action, the members of the Classes will continue to suffer damages and Defendant's violations of law will proceed without remedy while Defendant continues to retain and reap the proceeds of its wrongful conduct.

45.     Defendant has acted and refused to act on grounds generally applicable to the Nationwide Class and Massachusetts Subclass by engaging in deceptive and misleading representations and material omissions regarding its unlimited data plans that misled Plaintiff and the Nationwide Class and Massachusetts Subclass, thereby making appropriate final injunctive relief with respect to the classes as a whole.

## COUNT I
### Untrue and Misleading Advertising under M.G.L. c. 266 § 91

46.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

47.     AT&T's advertising, marketing and promotion of its "unlimited" data plan

was and is untrue, deceptive and misleading, in violation of M.G.L., c. 266, § 91.

48.     AT&T knew, or could, upon reasonable investigation, have ascertained that its advertising, marketing and promotion of its "unlimited" data plan was untrue, deceptive and misleading.

49.     AT&T has committed acts of untrue and misleading advertising, including by making material misrepresentations that its data plans were "unlimited" when they were not, and by failing to disclose and actively concealing material information regarding its practice of regularly throttling customers' data.

50.     AT&T's misrepresentations and nondisclosures deceive or have a tendency to deceive the general public.

51.     The untrue, deceptive and misleading advertising, marketing and promotion of the "unlimited" data plan by AT&T began at least in 2007 and has continued throughout the period described herein.

52.     As a consumer of  AT&T who was injured by Defendant's false and misleading advertising, Plaintiff is entitled to and brings this Count on behalf of the Massachusetts Subclass to seek all available remedies under M.G.L. c. 266, § 91, including injunctive relief.  The injunctive relief would include an order directing Defendant to cease its false and misleading advertising, retrieve existing false and misleading advertising and promotional materials, and publish corrective advertising.

## COUNT II
## Misrepresentation

53.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

54.     AT&T made express statements to Plaintiff and the members of the Classes prior to their purchase of Unlimited Plans that the Unlimited Plans offered to Plaintiff and members of the Classes were "unlimited."

55.     Upon information and belief, AT&T knew that it had represented that the Unlimited Plans purchased by Plaintiff and members of the Classes were "unlimited," and that these representations were false and misleading. As such, AT&T used false and misleading statements to induce Plaintiff and the members of the Classes to purchase the Unlimited Plans.

56.     Plaintiff and the members of the Classes justifiably relied upon AT&T's false and misleading statements in deciding whether to purchase the Unlimited Plan. As a direct and proximate result of the above described practices, Plaintiff and the members of the Classes sustained damages.

## COUNT III
## Fraudulent Concealment

57.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

58.     AT&T intentionally misrepresented or concealed from Plaintiff and the

members of the Classes that the Unlimited Plans were not "unlimited", and misrepresented that the Unlimited Plans were "unlimited."

59.     Plaintiff and the members of the Classes relied on these misrepresentations and omissions in purchasing AT&T's Unlimited Plans.

60.     Defendant AT&T performed the wrongful acts, concealed the information, and made the affirmative misrepresentations with the intent of gaining financial advantage to the disadvantage of Plaintiff and the members of the Classes.  AT&T's wrongful acts alleged herein were done with the intent to mislead and defraud.

61.     As a result of AT&T's wrongful conduct, Plaintiff and the members of the Classes have suffered, and continue to suffer losses, including economic and non-economic losses.

## COUNT IV
**Breach of Express Warranty**

62.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

63.     AT&T, through its advertisements, brochures, website, statements and other marketing materials, made representations to Plaintiff and the members of the Classes about the terms of the Unlimited Plan.

64.     These representations were aimed at consumers, including Plaintiff and the members of the Classes to entice them to purchase an Unlimited Plan.

65.     AT&T's representations were part of the basis of the bargain because Plaintiff

and the members of the Classes purchased and continued to renew their Unlimited Plan based on the reasonable expectation that they would continue to enjoy "unlimited" data.

66.      All conditions precedent to AT&T's liability under the agreement with Plaintiff and the members of the Classes have been performed by Plaintiff and the members of the Classes.

67.      AT&T breached the terms of the agreement with Plaintiff and the members of the Classes, including the express warranties with Plaintiff and the members of the Classes, by not providing a product which provided the promised benefits as described above.

68.      As a result of AT&T's breach of the agreement with Plaintiff and the members of the Classes and its warranties, Plaintiff and the members of the Classes have been damaged in an amount to be proven at trial.

## COUNT V
### Unjust Enrichment

69.      Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

70.      Plaintiff and the members of the Classes conferred a benefit upon AT&T, by being fraudulently induced to pay for AT&T's Unlimited Plan, which did not perform as promised and/or did not have the attributes and benefits promised by AT&T.

71.      By accepting and retaining such benefits, AT&T has been unjustly enriched at the expense of Plaintiff and the members of the Classes, including funds that Plaintiff and

the members of the Classes paid to AT&T for the Unlimited Plan.

72.     AT&T accepted and retained such benefits as a result of its deceptive, misleading and unlawful conduct which makes such acceptance or retention inequitable. AT&T was not entitled in law or in equity to receive such benefits.

73.     Plaintiff and the members of the Classes have suffered financial loss as a direct result of AT&T's conduct.

74.     Plaintiff and the members of the Classes are entitled to restitution for the full value of the benefits conferred, and for such other relief that this Court deems proper, as a result of AT&T's deceptive, misleading and unlawful conduct.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Classes pray for judgment against Defendant AT&T for the following relief:

A.     Certifying the Classes as requested herein;

B.     Ordering Defendant to pay Plaintiff's and members of the Classes' actual damages;

C.     Ordering restitution and disgorgement of Defendant's revenues or profits to Plaintiff and the members of the Classes;

D.     Awarding declaratory and injunctive relief as permitted by law or equity,

including: enjoining Defendant from continuing the unlawful and deceptive advertising practices as set forth herein, directing Defendant to retrieve existing false and misleading advertising and promotional materials, directing Defendant to engage in a corrective advertising campaign, directing Defendant to identify, with Court supervision, victims of their conduct and pay them restitution, and disgorgement of all monies acquired by Defendant by means of any act or practice declared by this Court to be wrongful;

E.      Awarding attorneys' fees and costs to Plaintiff and the Classes; and

F.      Awarding such other and further relief as may be just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable as a matter of right.

Dated: October 29, 2015


*/s/ Kenneth G. Gilman*_____
Kenneth G. Gilman
GILMAN LAW LLP
8951 Bonita Beach Road, S.E. Suite 525
Bonita Springs, FL 34135
Telephone: (781) 307-2526
kgilman@gilmanlawllp.com
Mass. Bar No. 192760

*Attorneys for Plaintiff*